IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| STEVEN E. EISENBERG, *et al.*, | ) | CASE NO.:    1:04 CV 1081 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| ANHEUSER-BUSCH, INC., *et al.*, | ) | |
| | ) | <u>AMENDED</u> |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |


This matter is before the Court on two motions: (1) Defendant The Beer Institute, Inc.'s

Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6), (ECF #139), and (2)

The Motion of Domestic Manufacturer and Importer Defendants To Dismiss (Rule 12(b)(6), F.R.

Civ. PR.).[1] (ECF #140).   After careful consideration of the pleadings and a review of all relevant

authority, both Motions to Dismiss are hereby GRANTED.

---

[1] Anheuser-Busch, Inc., Adolph Coors Company, Allied Domecq Spirits & Wine USA, Inc.,
Bacardi USA, Inc., The Boston Beer Company, Inc., Brown-Forman Corporation, Coors Brewing
Company, Diageo North America, Inc., Heineken USA, Inc., Kobrand Corporation, Jim Beam
Brands Co., Labatt USA, Mark Anthony Brands Inc., Miller Brewing Company, Samuel Adams
Brewery Company, Ltd. (d/b/a/ The Twisted Tea Brewing Company), Sidney Frank Importing
Co., Inc., and Skyy Spirits, LLC are collectively referred to as the "Domestic Manufacturer and
Importer Defendants." The remaining Defendants have filed a consent motion to extend their
response time until February 16, 2006.

**STANDARD OF REVIEW**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808 (3rd Cir. 1990).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." Jones v. City of Carlisle, Ky., 3 F.3d. 945, 947 (6th Cir. 1993) (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)).  However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1980).  In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## **PROCEDURAL HISTORY**

This action consists of two previously filed class action complaints which have been consolidated by agreement of the parties.  The first case, <u>Eisenberg v. Anheuser-Busch, Inc.,</u> Case Number 1:04 CV 1081, was originally removed from the Cuyahoga County Court of Common Pleas on June 7, 2004 based on diversity of the parties. (ECF # 1). The second case,  <u>Tully v. Anheuser-Busch, Inc.,</u> Case Number 1:04 CV 1101 was originally removed to this federal Court from the Cuyahoga County Court of Common Pleas on June 10, 2004, also based on diversity of the parties. (ECF #1).   Motions to Dismiss were filed in both cases.  Following discussions, all parties agreed to allow the Complaints in these two cases to be amended and consolidated into one action, thereby mooting the original Motions to Dismiss.  The consolidated Amended Complaint was filed under Case Number 1:04 CV 1081, and is captioned <u>Eisenberg, *et al.* v. Anheuser-Busch, Inc., *et al.*</u>. (ECF # 133).  Both the Eisenberg and the Tully Plaintiffs are now named in this action, and the Amended Complaint has been filed as a purported class action.         There are two classes defined in the Amended Complaint including: (A) "a Guardian class of all Ohio residents who are or were parents or guardians whose funds were used without their consent to purchase, for persons under the legal drinking age, alcoholic beverages marketed by Defendants during the period of 1982 to the present (the "Class Period"), excluding Defendants and their affiliates, officers, directors, and employees; and (B) "an Injunctive Class consisting of the parents and guardians of all children currently under the age of 21."

The Plaintiffs have brought claims under the Ohio Consumer Sales Practices Act, R.C. § 1345.01, *et seq.*, and for Unjust Enrichment, Negligence, Civil Conspiracy, and Fraudulent

Concealment[2] under the common law of the State of Ohio.  Plaintiffs request equitable relief, monetary damages, and the costs of this action.

Following the filing of the Amended Complaint, both the The Beer Institute and the Domestic Manufacturer and Importer Defendants filed Motions to Dismiss.  (ECF # 139, 140).  The Plaintiffs filed a Consolidated Opposition to Motions to Dismiss, and have since filed several notices of Supplemental Authority.  (ECF #147, 161, 167, 178, 184).  These motions have now been fully briefed by the parties and are ready for determination.

## **FACTUAL OVERVIEW**[3]

The Plaintiffs claim to seek redress against manufacturers for the deliberate and  reckless targeting of underage consumers in their advertising and marketing of certain alcoholic beverages. They claim that this alleged targeting of underage consumers adds to the epidemic of underage drinking and results in billions of dollars of illegal profit for the alcohol manufacturers.

This case is before this Court pursuant to 28 U.S.C. § 1332, based on the diversity of the parties.  As a federal district court sitting in diversity over a case which arises in Ohio, this  Court must apply the law of the state of Ohio.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Solly v. Manville Corp. Asbestos Disease Fund, 966 F.2d 1454 (6th Cir.), cert. denied, 506

---

[2]  Fraudulent Concealment, as used in the Amended Complaint  is not an independent cause of action.  Rather it is pled to avoid statute of limitations arguments that arise.  The statute of limitations issues are more appropriate for summary judgment and will not be addressed in this opinion.

[3]  The facts as stated in this Memorandum and Order are taken from the Amended Complaint and should not be construed as findings of this Court.  In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

U.S. 954 (1992).  If the Supreme Court of Ohio has not spoken, this Court "must ascertain from all available data what the state law is and apply it." Greyhound Food Management v. City of Dayton, 852 F.2d 866, 868 (6th Cir. 1988) (quoting Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir. 1985)). This includes dicta and holdings from analagous cases by the Supreme Court of Ohio, Ohio appellate courts holdings, restatements of law, law review commentaries, and the majority rule among other states. Id.

## ANALYSIS

According to the Amended Complaint (hereinafter "Complaint"), this lawsuit seeks redress for the deliberate and reckless targeting of underage consumers in the marketing of alcoholic beverages by the Defendants.  The Complaint contends that such marketing practices contribute to underage drinking and the problems it creates, including death, injury, illness, brain damage, and developmental delays.  These alleged harms, however, are not at issue in this lawsuit, and no Plaintiff alleges that they, or their children, have been harmed in any of these ways.  Rather, the damages sought in this lawsuit are the recoupment of monies given by parents to their underage children, or taken by the children without parental consent, which, in turn, have been spent on the illegal purchase of alcoholic beverages.  Plaintiffs also seek injunctive relief to enjoin Defendants "from engaging in illegal marketing of alcoholic beverages to underage persons, and into taking corrective actions to avoid marketing to underage persons."  (Amended Complaint, at pg. 62, ¶ 4). The Complaint alleged that the Defendants' marketing practices violate the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq., and includes claims for unjust enrichment, negligence, and civil conspiracy.

**A.  Pleading Deficiencies**

A Complaint must provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

    1.  Injury in Fact

Although injury  need not be pled with particularity, a complaint must set forth general factual allegations of injury resulting from the defendant's conduct.  National Organization for Women v. Scheidler, 510 U.S. 249, 256 (1994).  The Plaintiffs have alleged that they have been harmed by the Defendants' advertising and marketing practices in two ways: (1) economic injury to the family from a misuse of family funds; and (2) invasion of the parents' right to protect their children from marketing targeted to the children.  The Defendants claim that these allegations are insufficient to establish a harm to the Plaintiffs.

    a.  Family Funds

The Plaintiffs have not cited, and the Court is not aware of any legal doctrine that would recognize a parent's legal possessory interest in monies given to and spent by their children.  Once the Plaintiffs gave money to their children, that money is viewed as a gift and thereby a possession of the children. See Wolk v. Wolk, No. 98 CA 127, 2001 WL 1199836, *2 (Ohio Ct. App. Sept. 25 2001)(a gift to a minor is irrevocable); Benedict v. Prorock, NO. 77AP-467, 1977 Ohio App. LEXIS 8152, *10 (Ohio Ct. App. Nov. 10, 1977)(a completed gift is irrevocable).   The parents suffer no financial harm from the child's decision to spend that money in any way they see fit.  See 45 Ohio Jur. 3d Family Law § 60 (2003)("the parents acquire no legal or beneficial interest in the property by reason of their control and superintendence as natural guardians.")  If the child stole money from the parents to buy alcohol, this act is sufficiently independent of the underlying alleged tort against

-6-

the Defendants that the injury cannot be said to have been caused by the Defendants' actions.  There is no allegation that the Defendants' marketing and advertising of alcoholic beverages encouraged, incited or otherwise caused Plaintiffs' children to steal money from their parents.  Therefore, the economic loss, if any, to the Plaintiffs would be caused by their own children's acts of theft, and not by the marketing practices of the Defendants.

Plaintiffs also argue that Ohio law allows parents to sue for consequential economic damages resulting from torts that cause harm to their children.  All of the cases cited in support of this theory, however, involve claims for medical expenses born by the parents of children who had been physically injured by a defendant.  There is no allegation in this case that the Plaintiffs' children were physically injured, or that any injury required medical or other care that was paid for by the parents.  There is no allegation in this case that an alleged tort against Plaintiffs' children resulted in necessary consequential expenses for the parents.

These cases do not support a finding of injury based on a theory that parents should be reimbursed for monies they gave to their children, or which their children stole from them, even if those monies were spent on illegal activities.  Therefore, if Defendants' alleged bad deeds caused any economic injury under the facts alleged in the Complaint, that injury would be inflicted on the underage consumer, and not the parent Plaintiffs.  Ohio law allows for parents to sue as the "next friend" of an unemancipated minor; however, Plaintiffs do not purport to bring this suit in that capacity, nor do they claim that their children are currently unemancipated.  See Ohio R. Civ. P. 17(b).  The Plaintiffs claims are made on their own behalf and as such fail to state an economic injury attributable to the Defendants' alleged bad practices.

-7-

### b.  Parents' Right to Protect Their Children

Certainly it is beyond disagreement that Parents have a general right to make decisions concerning the care, custody, and control of their children.  See, e.g., Troxel v. Granville, 530 U.S. 57, 66 (2000); Wisconsin v.Yoder, 406 U.S. 205, 232 (1972).  However there is no support for the proposition that marketing, advertising, or otherwise exposing children to ideas and influences through the marketplace, interferes in any substantial way with this right.  There is no allegation that the Defendants have somehow prevented the Plaintiff parents from monitoring what media their children are exposed to; from communicating with their children to counter the images and influences present in mass advertising and marketing of Defendants' products; or from exercising control over their children's finances to prevent them from purchasing the Defendants' products.

All of the cited cases dealing with an interference with parental rights involve state actors interfering with basic parental decision-making.  These cases provide no support for the Plaintiffs' position because there is no such influence or interference at issue in this case.   The Defendants have no ability to require children to view their advertisements, or to purchase their products, and there are no allegations that Defendants usurped Plaintiffs' parental right to make decisions for their children in any way.  This Court is aware of no legal authority that would support restriction of a private party's freedom of speech and expression under the theory that the expressed ideas interfere with a parent's right to make decisions regarding their children's upbringing.  Parents have a right to make fundamental decisions about a child's upbringing, but they have no legal right to prevent other private parties from attempting to influence their children.  Plaintiffs' Complaint, therefore, does not allege a recognizable injury under this theory.

-8-

2. <u>Notice</u>

The federal civil rules require that a complaint set forth a "plain statement of the claims showing that the pleader is entitled to relief."  Civ. R. 8.  Though the pleading requirements are to be liberally construed, those requirements are not met unless the plaintiff alleges more than just bare assertions and legal conclusions.  <u>Cincinnati Enquirer v. Cincinnati Bd. Of Education</u>, 249 F. Supp. 2d 911, 913 (S.D. Ohio 2003).  The complaint must sufficiently inform each Defendant of the nature of the cause it is accused of.  It is not sufficient, in a class action suit, to allege that injury has been suffered by other unidentified members of the class.  Each named plaintiff must allege a personal injury.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975).  Further, where there are multiple plaintiffs and multiple defendants, the complaint must fairly attribute at least one plaintiff's alleged injury to each particular defendant in order to state a claim against them.

The Plaintiffs do not identify any particular beverage, any particular ad or marketing technique, or any particular manufacturer that caused any identifiable underage consumer to purchase or consume alcohol.   There is no allegation that any specific underage consumer was exposed to any one of the identified marketing practices in the Complaint, let alone that such exposure caused that underage consumer to purchase a product manufactured by a particular Defendant.  Although the Complaint does cite several individual marketing practices, there is not an identifiable marketing practice identified for each Defendant.  Plaintiffs' allegations are broad and general, basically claiming that Defendants (as a group) advertise in a such a way that they influence underage consumers (as a whole) to drink alcohol before they are legally allowed to do so.  Part of this theory rests on the premise that the Defendants were all acting in concert, though the Complaint

-9-

does not set forth independent acts for each Defendant which would support a conspiracy charge. Under these circumstances, it would be difficult for some Defendants to formulate a defense, not knowing which  ads or marketing practices the Plaintiffs claim to be harmful.

The Complaint does not give sufficient notice to each Defendant as to which of its advertisements and marketing practices are alleged to be harmful or which Plaintiffs have been harmed by which Defendant, although it does set forth enough information to provide reasonable notice to some of the Defendants.  If the Plaintiffs had otherwise stated appropriate claims upon which relief could be granted, and had alleged legally recognizable injury to the Plaintiffs, this Court would be required to parse through the Complaint to identify which Defendants received appropriate notice of the claims against them, and which did not.  However, because Plaintiffs have failed to state a legally recognizable injury, this exercise is not necessary.

Plaintiffs have requested that if this Court found that the pleadings were insufficient in any way, that they be allowed to Amend the Complaint again.   In order to determine whether such an allowance would be appropriate, the Court must decide whether amendment would be futile.   As part of that analysis, the Court has reviewed all of the issues raised by the Defendants in their Motions to Dismiss as well as the responses made by Plaintiffs.  For the following reasons, the Court finds that any amendment to the Complaint would indeed be futile, and that under the facts alleged in the Complaint, Plaintiffs can state no cause of action upon which relief may be granted.

**B.  <u>Preemption</u>**

Defendants argue that because the alcoholic beverage industry is a pervasively regulated industry, there can be no liability for issues relating to the sale or advertising of alcoholic beverages except as provided in the regulations established by the Ohio Liquor Control Commission ("the

-10-

Commission").  In essence, Defendants claim that Title 43 of the Ohio Revised Code, and any regulations enacted pursuant to the authority granted to the Commission in that Title supercede or preempt Plaintiffs' claims.  The Plaintiffs have raised three claims. One is based on a state statute and the other two are based in Ohio's common law.

1. <u>Statutory Claim under the Consumer Sales Practices Act</u>

The Plaintiffs' first claim is a statutory action under O.R.C. §1345, the Consumer Sales Practices Act.  The main argument made by the Defendants on this issue is that the rules adopted by the Commission in Chapter 4301 of the Ohio Administrative Code conflict with the CSPA to the degree that the CSPA applies to the sale, advertising or marketing of alcoholic beverages.   This argument is not well taken.  Nothing in the administrative rules (Chapter 4301) conflicts with the provisions in the Consumer Sales Practices Act.  Chapter 4301 does not permit or excuse unfair, deceptive or unconscionable practices in connection with the sale of alcohol, nor does it create any exception to the prohibitions set forth in the CSPA.

The administrative rules do set forth specific prohibitions related to the advertising of alcoholic beverages, some of which involve advertising that may appeal primarily to underage consumers.  Defendants argue that because the rules chose to prohibit some types of advertising but are silent on others, imposing liability for any advertising practices not specifically addressed in the regulations would conflict with those regulations.  In support of their positions, both Plaintiffs and Defendants cite to cases involving the preemption of municipal ordinances that may conflict with a state statute.  In those cases, courts have held that a municipal ordinance may conflict with a state statute if the municipal ordinance creates  additional prohibitions not contained in the state statute.  However, there are no municipal ordinances at issue in this case. The relationship between statutes

-11-

and ordinances is governed by the Ohio Constitution and is subject to different rules than is the relationship between statutes and administrative code regulations, or between statutes and common law causes of action.  These cases, therefore, are not particularly helpful in determining whether the Plaintiffs' claims are viable.

The mere absence of broader prohibitions in the administrative rules does not constitute an irreconcilable conflict with the restrictions set forth in the CSPA.  Each can be enforced without compromising the enforcement of the other.  The prohibitions and allowances in the administrative rules do not contradict the prohibitions and allowances in the CSPA.  Neither side has cited to any law that would support a finding that a state statute is in conflict with an administrative rule just because it contains additional prohibitions or liabilities not included in the administrative rule.

In addition, in those municipal ordinance cases cited by the parties, the state statute always prevailed over a municipal ordinance.  Conversely, in this case, the Defendants are arguing that administrative rules should prevail over a state statute. This conflicts with established Ohio law. Even if the Administrative regulations did conflict with the CSPA, Ohio law demands that the administrative rule must yield to a conflicting statute.  See, e.g., State ex rel. H.C.F., Inc. v. Ohio Bureau of Worker's Compensation, 80 Ohio St. 3d 642, 647, 687 N.E.2d 763, 767 (1998)("the rule conflicts with the statute, and the rule must yield"); State ex rel. Kildow v. Indus. Comm., 128 Ohio St. 573, 581, 192 N.E. 873, 876 (1934)(statutes override administrative rules whenever they conflict); State v. McDaniel, 23 Ohio St. 3d 35, syllabus, 490 N.E.2d 612, 613 syllabus (1986)(regulations do not control over a conflicting statutory provision).[4]  Thus, none of the

---

[4]  Even potentially conflicting statutory provisions, where possible, must be construed to give effect to both.  O.R.C. 1.51.  Only when a conflict is irreconcilable shall one be elevated over the other.   The administrative rules are not irreconcilable with the CSPA.  The CSPA merely provides a broader prohibition than do the administrative rules governing the advertising of

Administrative Code provisions cited by the Defendants can supercede or preempt the application of the CSPA to the advertising or marketing of alcoholic beverages.

Defendants also allude to the argument that the authorizing statute for O.A.C. Chapter 4301 may preempt the use of the CSPA to regulate the advertising of alcoholic beverages.  Ohio Revised Code § 4301.03(E), the Title devoted to "Liquor," states that the Ohio Liquor Control Commission "may" establish certain standards including "[u]niform rules governing all advertising with reference to the sale of beer and intoxicating liquor throughout the state . . . ."  Pursuant to this power, the commission has set forth rules concerning the advertising of alcoholic beverages in the Ohio Administrative Code Chapter 4301:1-1-44.   The statute permits the Commission, if it so chooses, to establish uniform rules governing the advertising of alcoholic beverages in the state.  The statute does not actually establish any such rules or regulations; nor does it specifically express any intent to supercede or displace other laws which may apply to general advertising or marketing practices in Ohio.

Defendants cite Queensgate Investment v. Liquor Control Commission, 69 Ohio St. 2d 361, 433 N.E.2d 138 (1982) for the proposition that O.R.C. § 4301.03(E) "grants a devolution of [the General Assembly's] authority over 'all advertising'" of alcoholic beverages to the Commission.  However that case was merely considering whether the Liquor Control Commission had the authority to enact a regulation affecting advertising.   That question is not an issue in this case. Queensgate did not specifically address whether the grant of authority to the Commission precluded the General Assembly from also enacting statutes that would affect the advertising of alcoholic beverages. In fact, through its reference to O.R.C. §4301.211 (since repealed) which "specifically

---

alcoholic beverages.

-13-

prohibit[ed] the advertising of the retail price of beer and malt beverages, which prohibition does not conflict with the general grant of authority of R.C. 4301.03(E)," the Court in Queensgate implicitly acknowledged that the General Assembly did retain the power to enact specific laws governing the advertising of alcoholic beverages despite the general grant of authority provided to the Commission. Id. at 364.  As further evidence that the General Assembly did not intend  O.R.C. 4301.03(E) to supercede, preempt or preclude the enactment of other laws that may affect the advertising of alcoholic beverages, the same Chapter that gave the Commission power to institute rules relating to advertising also contains other statutes specifically addressing the advertisement of alcoholic beverages in Ohio. See O.R.C. §§ 4301.22(E), 4301.24, and  4303.09. [5]

2.  Common Law Claims

The Plaintiffs' other two claims[6] are based on Ohio common law causes of action for negligence and unjust enrichment.   The general rule relating to the interaction of state statutory law and state common law is long held and remains as follows:

> Where a statute which creates a new right, prescribes the remedy for its violation, the remedy is exclusive; but when a new remedy is given by statute for a right of action existing independent of it, without excluding other remedies already known to the law, the statutory remedy is cumulative merely, and the party may pursue either at his option.

Fletcher v. Coney Island, 165 Ohio St. 150, 154, 134 N.E. 2d 371, 374 (1956)(citing City of Zanesville v. Fannan, 53 Ohio St. 605, syllabus ¶ 2,  42 N.E. 703, syllabus ¶ 2 (1895)). Defendants

---

[5] None of these statutes conflict with the prohibitions against deceptive, unfair or unconscionable consumer sales practices contained in O.R.C. § 1345.

[6] There is a fourth claim for civil conspiracy.  This is not pertinent to the preemption discussion, however, as the conspiracy claim is entirely reliant on whether one of the three underlying claims is determined to be valid.

have cited no statute or regulation that creates a new right of action or prescribes an exclusive remedy for parents whose children have been exposed to advertising for alcoholic beverages. Rather, they argue that the Liquor Control Commission's failure to create such a regulation is evidence of a legislative intent to allow alcohol manufacturers to direct their advertising and marketing efforts toward underage drinkers without legal consequence.

In Ohio a state statute does not preempt preexisting common law unless it specifically expresses an intention to do so. Even when a statute provides a new remedy for a preexisting right of action, the common law cause of action remains in full force unless the statute contains "language clearly showing the intention to supercede the common law." See Carrel v. Allied Products Corp., 78 Ohio St. 3d 284, 287, 677 N.E.2d 795, 798-99 (1997).[7]  "[T]here is no repeal of the common law by mere implication." Id. (quoting Frantz v. Mahr, 106 Ohio App. 465, 472, 155 N.E. 2d 471, 476 (Ohio App. Ct. 2nd Dist. 1957)).  Assuming for purposes of this issue only that there is a preexisting right of action in the common law, the question is whether any statute or regulation contains language clearly showing the intention to supercede the common law.

Even if the language of the O.R.C. § 4301.03(E)  which provides that Ohio's liquor control commission "may" establish uniform rules governing advertising of alcoholic beverages throughout the state" could be read to imply that the Liquor Control Commission regulations should be the only means of controlling alcoholic beverage advertising in Ohio, mere implication is not sufficient to override existing common law causes of action.  Preemption requires a clear expression, and there

---

[7]  Ohio law makes no distinction under this rule between statutes and regulations incorporated in the Ohio Administrative Code. Either may supercede the common law, but only if such an intent is expressly stated.  See  Hanshaw v. River Valley Health Systems, 152 Ohio App. 3d 608, 789 N.E.2d 680 (2003); Bresnik v. Beulah Park Ltd. Partnership, 67 Ohio St. 3d 302, 617 N.E.2d 1096 (1993).

is no express language of preemption in the statute.  In <u>Eller Media Company v. City of Cleveland</u>, 161 F. Supp. 2d 796, this Court held that the language of O.R.C. § 4301.03(E) did not constitute a clear expression of an intent to preempt municipal regulation of advertising alcoholic beverages.[8] The same language can hardly be argued to constitute a clear expression of an intent to preempt  a cause of action under the common law.  The language in the statute is permissive, not mandatory, and it makes no reference whatsoever to potentially overlapping common law causes of action.

As for the regulations created by the Liquor Control Commission pursuant to the authority granted them by O.R.C. § 4301.03(E), nothing in those regulations expresses an intent to preempt a common law cause of action.  The Ohio Administrative Code 4301:1- 1- 44 regulates the advertising of alcoholic beverages.  It allows manufacturers to advertise in Ohio through print and electronic media so long as, among other things, the advertisements do not condone or encourage excessive use of alcoholic beverages; do not portray intoxication; do not represent, portray, or make reference to children; do not represent, portray, or make any reference to Santa Claus; are not false; and do not create a misleading impression.  Any violation of these restrictions creates a cause of action for the Liquor Control Commission against the manufacturer.   Ohio Administrative Code 4301:1- 1- 44 does not create a private right of action for individuals, nor does it express any intent to prevent individuals from bringing a cause of action under a different statute or common law claim which provides a remedy for legally recognizable injuries they may suffer as a result of a manufacturers advertising and marketing practices.

---

[8]  In <u>Eller Media</u>, the Court did find that the municipal regulation at issue conflicted with the Liquor Control Commission's regulations, and was therefore preempted.  Municipal regulations, however, are subject to Constitutional and other legal restrictions not applicable to statutory or common law causes of action.  The test for whether a statute supercedes or preempts a common law cause of action does not require the same conflict analysis that is applied when a municipal regulation is being challenged.

-16-

For these reasons, Defendants' argument that Plaintiffs' claims are preempted or superceded by Title 43 of the Ohio Revised Code, and by the corresponding Ohio Administrative Code Regulations, O.A.C. 4301:1-1- 44 is not well taken.  Each claim, therefore, must be analyzed on its merits.

## C. Ohio Consumer Sales Practices Act

The Ohio Consumer Sales Practices Act, O.R.C. § 1345 *et seq.* ("CSPA"), provides consumers with protection against unfair, unconscionable, and deceptive sales practices by suppliers. The CSPA allows for rescission, monetary damages and/or injunctive relief.  O.R.C. § 13455.09(B)(C).  A violation of the statute may result in rescission or injunctive relief without proof of a specific injury.  Monetary damages, of course, may only be recovered if a monetary injury is alleged and proven.

### 1. Applicability

The Complaint alleges that Defendants are "suppliers;" that Plaintiffs are "consumers;" and that selling, advertising or marketing alcoholic beverages constitutes a "consumer transaction" within the meaning of the CSPA.  According to the CSPA, a supplier is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  O.R.C. § 1345.01(C).  A consumer is defined as "a person who engages in a consumer transaction with a supplier."  O.R.C. § 1345.01(D); and a consumer transaction is defined as "a sale, lease, assignment award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

The retail sale of alcoholic beverages fits the definition of a consumer transaction as it is  the

supply of goods to an individual for purposes that are primarily personal.  The Defendants in this case are not involved in the retail sale of alcoholic beverages, however, and therefore are not engaged in the business of effecting consumer transactions.   Plaintiffs contend that alcohol manufacturers are suppliers, nonetheless, because they are in the business of soliciting consumer transactions  through their advertising and marketing efforts. The question, then, is whether advertising and marketing through the mass media constitutes solicitation for purposes of the Consumer Sales Practices Act.

The CSPA does not provide a definition of "solicitation."  Black's Law Dictionary, Fifth Edition, defines solicitation as "asking, enticing, [or] urgent request.  Any action which the relation of the parties justifies in construing into a serious request."  Further it states that the term "solicit" implies "a serious request" and "implies personal petition and importunity addressed to a particular individual to do some particular thing."  Mass advertising and marketing efforts do not rise to the level of personal solicitation.   They do not create the same risk of undue pressure or intimidation as do acts of direct solicitation, and they are not as intrusive.  Mass media advertising and marketing, though designed to inform and influence, do not specifically ask or request anything from any particular individual, and, unlike solicitation, they require no immediate response or reaction from a consumer.

This Court finds, therefore, that mass media advertising and mass marketing efforts do not rise to the level of  "solicitation" and do not constitute a "consumer transaction" for purposes of the CSPA.  Further, a manufacturer whose only "contact" with retail consumers is through the mass advertising and mass marketing is not a supplier for purposes of the CSPA.  This finding should not be construed to apply to manufacturers who advertise or market their products personally to the

-18-

consumer at the actual point of sale, such as telephone solicitation (if the sale can be closed over the phone), home solicitation (when orders are completed in the home), or directly through retail agents (where materials provided by the manufacturer are distributed directly to an individual consumer at the point of sale). There are no allegations in the Complaint that the Defendants' advertising and marketing efforts were directed personally at any individual, or that they were provided to the consumer at the point of sale. Therefore, the Defendants in this case are not suppliers under the CSPA, and the advertising and marketing practices outlined in the Complaint do not constitute "consumer transactions" under the CSPA.

Even if the advertising and marketing practices alleged by Plaintiffs did constitute "solicitation" for purposes of the CSPA, the Plaintiffs are not "consumers" under the Act. The Plaintiffs, themselves, did not engage in any allegedly unfair, deceptive or unconscionable consumer transaction with the Defendants. The Plaintiffs were not the purchasers of Defendants' products. Further, none of the Plaintiffs are alleged to have been less than twenty-one years of age, and any advertising or marketing they may have been exposed to is not alleged to be improper when seen by adults of legal drinking age.

Plaintiffs contend that because they "(a) are at least incidentally exposed to solicitations aimed at others – their children; (b) are capable of consummating a transaction in the Defendants' goods legally; and (c) have been harmed by the Defendants' actions," they are "consumers" for purposes of the CSPA. Plaintiffs do not argue that the consumer transaction at issue is the actual purchase of alcoholic beverages. Rather, they contend that the transaction at issue is the solicitation of the sale of alcoholic beverages. None of the cases cited by Plaintiffs support their theory. The fact that the CSPA may be applied in some cases without a requirement of privity or a completed

-19-

transaction has no bearing on whether the Plaintiffs can assert a claim based solely on the fact that they were exposed to advertising and marketing practices that they claim were improper for other people (underage consumers) to view, but that they admit were perfectly legal and acceptable when viewed by "of age" adults such as themselves.    They have alleged that their children were consumers involved in a consumer transaction that violated the CSPA, however, their children are not parties to this action.  The Plaintiffs have brought this lawsuit in their own names and for their own supposed injuries, but they have set forth no viable claim that they, themselves, were involved in a consumer transaction that violated the CSPA.   Therefore, as the Plaintiffs have not met any of the threshold requirements for filing suit under the CSPA, this cause of action must be dismissed for failure to state a claim.

2.  <u>Eligibility for Class Treatment</u>

If the Plaintiffs had established a possible claim under the CSPA, that claim could not be brought as a class action.  A class action is appropriate under the CSPA only when

> the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of the section 1345.05 of the Revised Code

and in accordance with Civil Rule 23, as amended.  O.R.C. § 1345.09(B).

Plaintiffs assert that a class action is appropriate under this provision because the Defendants' alleged practices have previously been declared to have violated 1345.02 and 1345.03 in <u>State of Ohio, ex rel., Celebrezze v. Auto Adoption Leasing, Inc.</u>, NO. 88-1608, 1990 WL 677017 (Montgomery Cty. Common Pleas July 23, 1990)(Ohio Attorney General Public Inspection File

-20-

Index #0998), and <u>Brown v. Lyons</u>, 332 N.E.2d 380 (Ohio Ct. C.P. 1974).  Those cases determined that representing that a product has benefits it does not or cannot have violates the CSPA.  This, however, provides no more guidance to the Defendants than does the statute itself.  As Plaintiffs themselves have pointed out, the purpose of the prior determination requirement is to put parties on notice that their conduct constitutes an unfair or unconscionable trade practice.

Plaintiffs claim that by exposing underage drinkers to alcohol advertising, Defendants are implicitly advertising that underage consumers can drink those beverages and this is tantamount to advertising a benefit that does not exist.  However, Plaintiffs admit that the advertisements and marketing practices they complain of are perfectly legal when shown to "of age" adults.  They also admit that the Defendants never  have stated in any of their advertising or marketing that underage consumers can purchase or consume their product.   Therefore, they cannot contend that the Defendants' advertisements claim that their product has a benefit that it does not have.

Even if such a contention were substantiated through the course of this litigation, there are no previous cases that would put Defendants on notice that the facts alleged in this case constitute a violation of the CSPA.  Neither side has cited any Ohio cases in which advertising alcohol (or any other legally unavailable product) to underage consumers was found to be a violation of the CSPA. There is nothing in either the <u>Brown</u> or <u>Celebrezze</u> cases that would indicate that the conduct alleged in this case –   mass advertising of alcohol targeted at underage consumers –   violates the CSPA.

Plaintiffs argue that <u>Marrone v. Phillip Morris</u>, 2004 WL 205048 (Ohio App. Sept. 15, 2004), supports their position that <u>Celebrezze</u> is a sufficient "judicial determination" on which to find that Defendants' conduct had previously been judicially determined to violate the CSPA and that a class action is therefore appropriate. (Plaintiffs' Memorandum in Opposition to Defendants' Motion to

Dismiss, at 40-41, fn.61).  (ECF # 147). There are two major problems with this argument, however. The first is that the <u>Celebrezze</u> case cited by Plaintiffs as the "prior judicial determination" which allows for class treatment of their claims is not the same <u>Celebrezze</u> case cited and discussed in <u>Marrone</u>.  Plaintiffs cite <u>State of Ohio, ex rel., Celebrezze v. Auto Adoption Leasing, Inc.</u>, NO. 88-1608, 1990 WL 677017 (Montgomery Cty. Common Pleas July 23, 1990) as the relevant "prior judicial determination."  The <u>Marrone</u> court did not consider this case.  Rather, the <u>Marrone</u> court looked at the similarities between the claims against Phillip Morris, and the claims raised in <u>State ex rel. Celebrezze v. Hi-Lo Oil Co., Inc</u>., Franklin C.P. No. 85-CV-01-518 (July31, 1985), an entirely different case involving entirely different conduct.

Secondly, the conduct alleged against Phillip Morris in <u>Marrone</u> was substantially similar to the conduct addressed in <u>State ex rel. Celebrezze v. Hi-Lo Oil Co., Inc</u>..  In both cases the defendant misrepresented to consumers the actual ingredients in its product.  Conversely, the conduct addressed in <u>Brown</u> and <u>State ex rel. Celebrezze v. Auto Adoption Leasing, Inc.</u>  had absolutely nothing to do with the conduct alleged in this case (i.e., advertising products to consumers who could not legally purchase those products); and nothing in those cases would lead the Defendants to equate such conduct with "advertising a benefit that does not exist."[9]  Therefore, as the Plaintiffs can point to no prior rule adopted under division (B)(2) of section 1345.05 of the Revised Code or judicial determination by a court of this state that conduct similar that alleged in this case constitutes a

_____

[9]  Plaintiffs also argue that because the industry allegedly recognizes through its Code of Responsible Practices that marketing to young people is inappropriate, that this is somehow sufficient to satisfy the notice requirements of O.R.C. § 1345.09(B).  This argument is misguided. O.R.C. § 1345.09(B) allows class treatment of a claim only if the alleged violation was an act or practice declared to be deceptive or unconscionable **by rule adopted under division (B)(2) of section 1345.05 of the Revised Code** or has been determined to violate the CSPA by **a court of this state**.  The alcohol beverage code of responsible practices satisfies neither of these requirements.

violation of the CSPA, this case is not appropriate for class treatment under O.R.C. § 1345.09(B).

### D.  Unjust Enrichment

Plaintiffs' claim for unjust enrichment is based on the following allegations found in paragraphs 135 through 138 of the Complaint:

> 135.  Defendants have engaged in wrongful conduct resulting in financial losses incurred by Plaintiffs and the Classes.[10]
> 136.  The Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes in that they have received tens of millions of dollars from the unlawful sale of alcohol to minors.
> 137.  It would be manifestly unjust and unconscionable for Defendants to retain the revenues and profits derived from the illegal consumption of alcoholic beverages by minors.
> 138.  Wherefore, Defendants as a matter of equity should be compelled to disgorge the full amount of their unjust enrichment...

The Ohio Supreme Court has stated that unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." Johnson v. Microsoft Corp., 106 Ohio St. 3d 278, 286, 834 N.E.2d 791, 799 (2005).   Restitution is available as a remedy for unjust enrichment when the following factors are established: (1) a benefit is conferred by a plaintiff on a defendant; (2) the defendant knows about the benefit; and (3) the defendant retains the benefit under circumstances where it is unjust to do so without payment.  See e.g., Hambleton v. R.G. Berry Corp., 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298, 1302 (1984).   The purpose of unjust enrichment claims "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." Johnson v. Microsoft, 106 Ohio St. 3d at 286,

---

[10]  Despite the allegation that this claim is made on behalf of the "Classes", this claim cannot apply to Class B, as there is no allegation that the funds of Class B Plaintiffs were used to purchase alcoholic beverages for underage drinkers, that the children of Class B members purchased alcoholic beverages, or that Class B Plaintiffs otherwise suffered any financial losses.

-23-

(citing Hughes v. Oberholtzer, 162 Ohio St. 330, 335, 123 N.E.2d 393, 397(1954)).  Unjust enrichment is a quasi-contractual equitable claim which is limited to situations where the court may create an implied contract between parties when one side has provided a benefit for which it should be compensated.  It is not a substitute for a tort or contract claim.

Plaintiffs in this case allege a loss, but they do not allege that they have directly conferred any benefit upon the Defendants.  The closest Plaintiffs come to alleging this essential element of unjust enrichment is to state that they gave money to their children, who used that money to pay a retailer or an adult of drinking age to purchase alcohol that was manufactured by the Defendants.  Just as in Johnson v. Microsoft, the Plaintiffs have failed to allege any economic transaction between themselves and the Defendants.  Therefore, just as in Johnson v. Microsoft, Plaintiffs here cannot establish that they conferred any benefit upon the Defendants.  In fact, in this case the Plaintiffs are even further removed from the transaction than were the Plaintiffs in Johnson.

Plaintiffs cite Reisenfeld & Co. v. Network Group, Inc., 277 F.3d 856, 861 (6th Cir. 2002), for the proposition that Ohio recognizes that a defendant without privity to a transaction or any direct contact with the plaintiff may receive a passive benefit from a transaction that would be inequitable and unjust for the defendant to retain without paying some form of compensation.  That case is distinguishable, however, as there was no question in that case that the defendant received a benefit from the plaintiff even though the defendant did not hire the plaintiff.  Here, however, the Defendants received no benefit from the Plaintiffs.

The only economic transactions the Defendants have allegedly entered into were the transactions by which they sold their products to a retailer.  Those products were sold without regard to who the final consumer might be, and there is no allegation that the Defendant had any control

-24-

over who the retailer chose to sell its products to.   There has been no complaint that the retailer did not receive the appropriate goods in exchange for the compensation paid to the Defendants.  There is no allegation of a transaction between the Defendants and the Plaintiffs, or even between the Defendants and the Plaintiffs' children.  Therefore, Plaintiffs cannot establish that the Defendants retained a benefit, conferred by the Plaintiffs, to which they were not entitled.  Consequently, the Plaintiffs' claim for unjust enrichment cannot be sustained.

**E.  Negligence**

In order to establish actionable negligence, a plaintiff must show the existence of a legal duty, a breach of that duty, and an injury proximately caused by the breach.  Jeffers v. Olexo, 43 Ohio St.3d 140, 142, 539 N.E. 2d 614, 616(1989).

A right of action under the common law theory of negligence can only arise when the defendant owes a duty of care to the plaintiff.  A duty may be established by common law, by legislative enactment, or by the facts and circumstances of a particular case; there is no specific formula, under Ohio law,  for determining whether a duty exists. Chambers v. St. Mary's School, 82 Ohio St.3d 563, 565, 697 N.E.2d 198, 200 (1998), reconsideration denied (1998), 83 Ohio St.3d 1453, 700 N.E.2d 334;  Mussivand v. David, 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (1989). The existence of a duty is a question of law for the court to determine.  Mussivand v. David, 45 Ohio St. 3d at 318.

The Plaintiffs in this case contend that the Defendants owe the Plaintiffs, as parents of underage children, several duties which can form the basis for a negligence claim, including: (1) "the duty to use their reasonable best efforts to avoid extensively exposing children and other minors to alcohol advertising;" (2) "the duty to ensure that their marketing efforts do not unreasonably induce

-25-

or encourage minors to purchase their products;"  (3) "the duty to use their reasonable best efforts to ensure that minors do not begin to drink alcoholic beverages as a result of their marketing efforts;" and (4) " the duty to take reasonable measures to insure that their products are not sold to underage persons."  (Amended Complaint, ¶ 140).

None of these alleged duties are founded in a legislative enactment or in Ohio's common law; therefore, the Court must look to the specific facts and circumstances alleged in this case to determine if a legal duty should be imposed.  When determining whether a duty exists on a case by case basis, Ohio courts generally look to the foreseeability of the injury -- that is, whether a reasonably prudent person would anticipate that an injury was likely to result from the performance or nonperformance of an act.  See Texler v. D.O. Summers Cleaners & Shirt Laundry Co., 81 Ohio St.3d 677, 693 N.E.2d 271 (1998); Menifee v. Ohio Welding Products, Inc., 15 Ohio St.3d 75, 77, 472 N.E.2d 707, 710 (1984).

> 1.  Foreseeability

It is foreseeable to all that many underage people will attempt to obtain and consume alcohol before they are of legal age to do so.  This does not, however, create an actionable legal duty in every person who encounters a person under twenty-one to prevent or discourage underage drinking, or to make drinking seem unappealing.  The Defendants, as manufacturers, may be able to foresee that their advertising and other marketing efforts, which by definition are aimed at promoting and encouraging the use of their product, will have the same effect on underage viewers as they have on of-age drinkers – i.e. the viewer will be more inclined to want to try the manufacturers product. However, this does not create a foreseeable legal injury to the parents of those underage consumers.

Even if parents were to suffer a legally recognizable injury as a result of their underaged children's purchase of alcohol (something not established by the Complaint in this case), that injury would not be a foreseeable consequence of Defendants' advertising and marketing tactics. Assuming, as we must under the dismissal standard, that Defendants target their marketing and their products to underage consumers, and that they intended to make drinking more appealing to underage drinkers, there is no allegation that they also promote or otherwise have the foreseeable effect of encouraging retailers and of-age adults to violate the laws which prohibit them from providing alcoholic beverages to underage drinkers. In other words, though it may be foreseeable that underage drinkers will be inspired by marketing and advertising to want to try the Defendants' products, there is no injury inherent in an underage person's desire to drink. An injury can only occur when the underage person illegally obtains and consumes alcohol.

In Ohio, an alcohol manufacturer may not directly sell its product to individual consumers. They may only sell their products to the State of Ohio or to a permitted wholesaler. O.R.C. § 4301.24. It is common knowledge that persons under the age of twenty one are not legally allowed to purchase or imbibe alcohol.[11] In fact, every retailer of alcoholic beverages in Ohio is required to post a card stating this fact, and are subject to penalties for violations. O.R.C. § 4301.637. Therefore, in order for the Defendants' alleged marketing tactics to result in any injury to the Plaintiffs, at least two levels of third parties must intervene by violating the law. Both the underage

---

[11] Courts have previously held that as a matter of law the dangers of alcohol use are common knowledge to the degree that manufacturers have "no duty to add, by labels or advertising, to the flow of information." Desatnik v. Lem Motlow, Prop., 1986 Ohio App. Lexis 5240, *10 (Mahoning Cty. 1986)(citing Garrison v. Heublien, Inc., 673 F.2d 189 (1982)). This same reasoning would favor a finding that manufacturers have no duty to affirmatively discourage or prevent underage drinkers from seeking to obtain alcohol when it is common knowledge that underage drinking is illegal.

consumer and some of-age adult or retail seller must conspire to illegally obtain alcohol for the Plaintiff's child.

Generally the illegal acts of third parties break the chain of causation in a negligence action. There are exceptions, however, when the criminal acts of others are sufficiently foreseeable results of a defendant's actions or failure to act.  In this case, there is no allegation that the alcohol manufacturers have, either individually or through some larger conspiracy taken any action that would foreseeably cause a retailer or other legal adult to risk criminal and administrative sanctions by providing alcohol to underage consumers.  Therefore, the Complaint does not allege facts which could lead this Court to find that Defendants' advertising and marketing practices created a foreseeable risk of increased alcohol sales to underage consumers and consequently,  a foreseeable risk of harm to the parents of underage consumers.

2.  <u>Causation/Control</u>

Even if the forseeability of the alleged injuries were established, that alone is not enough to create liability.  <u>Simpson v. Big Bear Stores Co.</u>, 73 Ohio St. 3d 130, 134, 652 N.E.2d 702, 705 (1995).  Courts, must also consider whether the Defendant had control over the conduct or circumstances that led to the alleged injury and whether the Defendants' actions were the proximate cause of injury. <u>See</u> <u>Id.</u>; <u>Wallace v. Ohio Dept. Of Commerce</u>, 96 Ohio St. 3d 266, 274, 773 N.E.2d 1018, 1026 (2002).

Defendants have no control over whether an underage consumer will chose to use their parents money (either given to them, or stolen by them) to try and illegally purchase alcoholic beverages.  Defendants also have no control over whether a store clerk, or an adult of legal drinking age will knowingly violate the law and provide alcohol to an underage person.  In fact, Defendants

have no control over an immeasurable number of factors that may influence an underage person's decision to purchase or consume alcoholic beverages including but not limited to parental and other family influences, peer pressure, religious influences, education, and individual personality traits.

Even if the Defendants could control the behavior of the relevant third parties, they have no duty to do so.  Ohio law provides that absent a special relationship, there is no duty to control the conduct of a third person (here either the children at issue, or the individuals who actually provided those children with alcohol) in order to prevent them from causing harm to themselves, or to a third party.  See Gelbman v. Second National Bank of Warren, 9 Ohio St.3d 77, 78, 458 N.E.2d 1262, 1263 (1984);  Restatement of the Law 2d, Torts, Sections 316 through 319.  The Defendants do not have a recognized special relationship with the Plaintiffs or their children, or with the individuals who provide alcohol to underage consumers.[12]

Plaintiffs cite City of Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St. 3d 416, 768 N.E.2d 1136 (2002) in support of their position that Defendants can be held liable for injury to the Plaintiffs caused by the illegal acts of a third party.  That case is distinguishable, however.  First, in Cincinnati v. Beretta the Court held that municipalities were foreseeable plaintiffs who had suffered consequential damages resulting from a third parties' misuse of the Defendants' product.  In this case, even if some harm were foreseeable, the Plaintiffs are not the foreseeably injured parties.  As set forth above, there is no recognizable injury to the Plaintiffs, and they have not alleged any consequential economic damages resulting from their children's illegal purchase of alcohol.  Nor would any such

---

[12]  Recognized relationships that give rise to a duty to control a third person's conduct include: (1) parent/child; (2) master/servant; (3) custodian/knowingly dangerous person.  In this case, Parents are suing the Defendants, alcohol manufacturers, who have no special relationship with their children for alleged harm caused by their underage children's drinking, even though the parent/child relationship does create a legal duty in the parent to control the child's conduct.

injuries or damages be expected. If any injury were to be anticipated from the Defendants' advertising and marketing practices, it would be an injury to the underage consumer. The Plaintiffs in this case, however, do not seek to recover for injuries to their children. They have sued on their own behalf claiming personal injury to themselves as parents.

Second, the alleged bad acts of the defendant in Cincinnati v. Beretta included defective design of the product and a failure to control the distribution of its product. In this case there is no allegation that the Defendants' products are defective. Further, distribution of alcohol is regulated by the state of Ohio and is out of the Defendants' control. Under Ohio law, the Defendants may only sell their product to licensed distributors. There is no allegation that their distribution practices violate this regulatory scheme in any way, or that the distribution system is somehow responsible for inducing underage consumers to purchase alcohol. Therefore, Cincinnati v. Beretta is not controlling on the issue before this Court.

There are several cases which more directly address the issues raised in this case. Those cases have found that manufacturers who advertise their products do not have sufficient control over the actions of consumers to justify holding them liable for injuries caused by a consumer's misuse or illegal use of their product. For example, the Court in Gawloski v. Miller Brewing Co., 96 Ohio App. 3d 160, 644 N.E. 2d 731 (1994), when faced with a similar claim, held that advertising by alcohol manufacturers which made drinking appear socially acceptable, positive, attractive and harmless could not be the legal cause of injury to a plaintiff who was an alcoholic. Id. (holding that "showing beer consumption in a positive light or as a positive activity [does not have] the effect of negating basic common knowledge" about the effects of alcohol). The Court in Smith v. Anheuser-Busch, Inc., 599 A.2s 320 (R.I. 1991) similarly found that advertising was not the cause of injury to an

underage consumer who purchased and drank beer and then drove while intoxicated.

There are several other cases around the country that support a finding that a manufacturers advertising efforts cannot be the legal cause of harm to a plaintiff when the plaintiff engages in illegal acts.  See e.g.,  Malek v. Miller Brewing Co., 749 S.W.2d 521 (Tex. App. 1988); Robinson v. Anheuser-Busch, Inc., No. 00-D-300-N, 2000 U.S. Dist. LEXIS 22474, *7 (M.D. Ala. July 7, 2000). In this case, the Plaintiffs alleged injury is even further removed from the Defendants actions and control, because the Plaintiffs, as parents, may not ever have even been exposed to Defendants marketing techniques, nor are they the party directly affected by the messages contained therein.  The primary injury, if any, is suffered by the underage consumer.  The parents' injuries can only be derivative of an injury to their child.

Plaintiffs fail to plead facts that would establish which Defendants were the proximate cause of their injuries.  Setting aside the fact that this Court has determined that no legally recognizable injury has been alleged, Plaintiffs have failed to identify which of their children, if any, were exposed to which Defendants' marketing and advertising practices.  In fact, not a single underage consumer has been identified as having purchased, or otherwise obtained or consumed alcohol. The Court in Ileto v. Glock, Inc., 349 F.3d 1191 (9th Cir. 2003) cert denied, 72 U.S.L.W. 3216 (U.S. Jan. 10, 2005)(No. 04-423), a case relied on by Plaintiffs, refused to allow claims to go forward against defendants whose product could not be directly traced to the alleged injury.  The court held that as a matter of law, there was no proximate cause between those defendants' practices and the plaintiff's injuries.  Id. At 1216.  Similarly, the Court in Gale v. Int'l Bus. Machines Corp., 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) dismissed claims based on alleged misleading statements when the plaintiff never alleged in his complaint that he had actually seen any of the statements.  These cases support

a finding that proximate cause has not been properly pled against any particular defendant in this case.   The Complaint also fails to allege that any underage consumer attributed their purchase or consumption of alcoholic beverages to the advertising and marketing practices of the Defendants. Thus, the Complaint does not allege any injury that is closely connected to the Defendants' alleged bad practices.  "[L]egal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."   <u>Johnson v. University Hospitals</u>, 44 Ohio St. 3d 49, 57, 540 N.E.2d 1370, 1377 (1989)(citing Prosser & Keeton, *Law of Torts* § 41 (5th Ed. 1984)).  This Court cannot say that, as pled, Defendants' alleged practices are so closely connected to the Plaintiffs' alleged loss that the law is justified in imposing liability in this case.

### 3.  Policy Considerations

Policy considerations also may weigh into the determination of whether a legal duty exists. <u>Wallace v. Ohio Dept. Of Commerce</u>, 96 Ohio St.3d at 274, 773 N.E.2d at 1026 (2002).   Courts in this circuit and across the country have consistently refused to impose a duty on  entities who disseminate ideas and messages through the mass media to protect underage consumers from the possible ramifications of those messages.  In <u>Zamora v. CBS</u>, 480 F. Supp. 199 (S.D. Fla. 1979)(cited with approval in <u>Watters v. TRS, Inc</u>., 904 F.2d 378, 382 (6th Cir. 1990)),   the Court refused to find a legal duty to prevent underage consumers from being overexposed to violence on television.

That court held that "the plaintiffs seek the imposition of a duty (a standard of care) which has no valid basis and would be against public policy.  A recognition of the "cause" claimed by the plaintiffs would provide no recognizable standard for the [Defendants' industry] to follow...."  The Court held that in order to hold the Defendants liable, they would have to be charged with

anticipating the degree of exposure the minor had to the media messages, the parent's acquiescence in allowing that exposure; the parent's failure to identify a problem in their child; and that the minor would respond by acting illegally.  See also, James v. Meow Media, Inc., 90 F. Supp.2d 798, 805-806 (W.D. Ky 2000)(defendants owed no duty of care to plaintiffs to prevent illegal conduct by minors who view or use their products).  The Court further held that creating liability under those circumstances would constitute a serious expansion of traditional tort law which is not warranted and is not suited for judicial resolution.  Zamora v. CBS, 480 F. Supp. 199.  Similar policy considerations apply to preclude the imposition of liability in this case.

Any attempt to control the marketing and advertising of alcoholic beverages raises a multitude of issues, both legal and practical.  It would be nearly impossible for this Court to define what is and is not an appropriate effort to avoid extensively exposing children and other underage consumers to alcohol advertising; what types of marketing unreasonably induce or encourage underage consumers to purchase alcohol; what efforts would ensure that underage consumers do not begin to drink alcoholic beverages as a result of their marketing efforts; and what measures manufactures could take that would reasonably insure that alcohol is not sold to underage consumers.  As evidenced by the facts set forth in the Complaint, such oversight would require an analysis of the market shares of various alcoholic products; an analysis of the readership and viewing demographics for national magazines, television ads and internet site traffic; and an analysis of the profitability of advertising in various mediums.  It would require this court to isolate the influence of advertising from all other factors that may lead a underage consumer to purchase alcohol in order to determine causation.

Each of these factors would be subject to constant change as the markets, demographics and other influences continuously fluctuate.  It would require the imposition of content-based restrictions

on commercial speech, and, as it affects national advertising, could raise commerce clause issues. It would require deciding what humor, what images, and what themes appeal more to consumers under twenty-one, than to those over twenty-one years of age.  It would also subject the Defendants to potentially different standards in every case brought in Ohio and around the country.

These are not the kind of decisions and policy considerations that are meant to be addressed by the Courts on a case by case basis. There can be no doubt that underage drinking is a serious and widespread problem with potentially devastating and sometimes deadly consequences.  There is also no doubt that alcohol manufacturers, distributors, and retailers all profit to some degree from underage drinking.  This Court is even willing to go so far as to hold it self-evident that some of the marketing tactics cited in the Complaint may be sophomoric, lewd, or irresponsible. However, there are currently no laws that prohibit alcohol manufacturers from advertising their products in this way. Nor is there any law currently in place that prohibits marketing alcohol in a way that may appeal to underage drinkers, or that prohibits the specific targeting of  underage drinkers.

There are, however, laws in place to protect against underage consumption of alcohol.  These laws prohibit the sale of such beverages to underage consumers, and prohibit the consumption of alcohol by underage consumers.  Enforcement of such laws, is out of the hands of the manufacturers. Retail sellers, law enforcement, and parents all have equal roles in the advancement and enforcement of such laws, and in otherwise preventing underage drinking.  The Defendants in this case produce, market and wholesale a legal product.  There is no allegation that they have ever directly sold alcohol to a minor; there is no allegation that they have encouraged their U.S. retailers to sell alcohol to underage consumers; and there is no allegation that they have ever lied or misled anyone about the legality of underage drinking in their advertising and marketing campaigns.   Under these

-34-

circumstances,  this Court cannot find that the Defendants owed a legal duty to the Plaintiffs to limit their marketing and advertising in the manner Plaintiffs have suggested, though efforts to that end would be laudable.

The policy considerations raised by this case are more suited to legislative consideration than to judicial fiat.  The Ohio Supreme Court has long recognized that the Ohio General Assembly, not the court, is the proper body to resolve public policy issues.  See e.g., Johnson v. Microsoft Corp., 106 Ohio St. 3d at 284, 834 N.E.2d at 797-798(citing State v. Smorgala, 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 673-74 (1990); State ex rel. Cincinnati Enquirer, Div. Of Gannett Satellite Information Network, Inc. v. Dupuis, 98 Ohio St.3d 126, 781 N.E.2d 163 (2002)).  Therefore, this Court declines to accept the Plaintiffs' offer to create a new legal duty that would prevent alcohol manufacturers from targeting underage consumers, or from otherwise unreasonably attempting to expose them to the advertising and marketing of alcoholic beverages.

### F.  Conspiracy

Civil conspiracy is a derivative cause of action requiring an underlying unlawful act.  See e.g., Northeast Ohio Coll. Of Massotherapy v. Burek, 144 Ohio App. 3d 196, 211, 759 N.E.2d 869, 880 (2001).  When the claims which for the basis for the underlying unlawful act fail as a matter of law, a conspiracy claim based on such acts must fail as well.  Id.  As the underlying claims in this case have been found to be insufficient to state a claim upon which relief can be granted, the conspiracy claim is also insufficient and must be dismissed.

### G.  Constitutionality

The relief requested by the Plaintiffs also raises Constitutional issues ranging from First Amendment concerns to matters implicating the Commerce Clause.  General jurisprudence dictates,

however, that Constitutional issues should not be addressed where relief fails on other grounds. See e.g., <u>United Stated v. Raines</u>, 362 U.S. 17 (1960); <u>Armstrong v. Armstrong</u>, 350 U.S. 568 (1956); <u>Minnesota v. Northern Securities Co.</u>, 194 U.S. 48 (1904). Therefore, as this Court has found that Plaintiffs' claims must all be dismissed under Ohio law, there is no need to address the constitutionality of Plaintiffs' requested relief.

## CONCLUSION

For all of the reasons set forth above, the Court finds that Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Further amendment would be futile under the circumstances. Therefore, the Plaintiffs' claims are hereby dismissed with prejudice. IT IS SO ORDERED.

                            s/Donald C. Nugent
                            DONALD C. NUGENT
                            United States District Judge

DATED: <u>February 1, 2006</u>